BYRD *v.* BROOKS.

4-9110 · · · · · · · · · · · · · · · · · 227 S. W. 2d 961

Opinion delivered March 6, 1950.

*Warren E. Wood* and *Griffin Smith, Jr.,* for appellant.

*E. L. Hollaway,* for appellee.

LEFLAR, J. This litigation grows out of a claim by appellee William Brooks against the State of Arkansas for the price of certain cotton seed allegedly sold by Brooks to the State, and used by the State at the penitentiary farm, many years ago. Brooks in 1923 received a payment of $14,023.68 on his claim, and since that time has made constant efforts to·secure from the State the balance, with accumulated interest, of what he asserted to be due him.

The Arkansas General Assembly in 1943 appropriated certain sums for the use of the State Claims Commission in discharging valid claims against the State, the appropriation including (it is agreed by the

parties hereto) $74,852 which was allocated to the Brooks claim. At that time this was the amount, including interest, which Brooks asserted was due him. Under this enactment the claimant would not necessarily receive the whole amount of his claim, nor even receive any part of it; the statute rather authorized the payment of such amount, up to the appropriated maximum, as the Claims Commission should find to be properly owing on the claim. Apparently the Commission took no action on the Brooks claim, or at least did not allow it, during the year and a half after enactment of the statute.

On Nov. 4, 1944, Brooks entered into a written contract with appellant Clyde Byrd, a lawyer, whereby Byrd undertook to represent Brooks as his attorney in securing payment of the claim in return for a fee of one-third of the amount collected. This contract included a clause reserving to Brooks the right to disapprove and reject "any settlement made for an amount less than the present appropriation". At the time this contract was made Byrd was a member of the Senate of the General Assembly of Arkansas. Thereafter, either by Byrd's procurement or by arrangement with Brooks, appellant G. W. Lookadoo, also a member of the Senate and a lawyer, came into the case to assist Byrd.

On Dec. 21, 1944, the claim was presented to the Commission, and it voted to award Brooks the sum of $15,405 in full settlement. A voucher in that amount was issued payable to Brooks and Byrd jointly. Brooks promptly refused to accept the settlement. Byrd received and held the $15,405 voucher for some time but he alone could not cash it and Brooks refused to join him in cashing it. The 1945 General Assembly, of which Senators Byrd and Lookadoo were members, reappropriated the amount of the award so that it could be paid during the next biennium, but Brooks continued his refusal to compromise.

Complaint in the present case was filed by Brooks in Pulaski Chancery Court on Sept. 8, 1947. The complaint alleged that Byrd and Lookadoo were applying

to the State Fiscal Control Board (which had succeeded to the functions of the Claims Commission) for reissuance of the $15,405 voucher as two separate vouchers, one for $10,270 (two-thirds) payable to Brooks, the other for $5,135 (one-third) payable to Byrd and Lookadoo, and that according to his information the Board was preparing to comply with this request. The complaint concluded with prayers that Byrd and Lookadoo be restrained from proceeding with their application for separate vouchers and that the Board be restrained from issuing them. After service on Governor Ben Laney, for the Board of Fiscal Control, and on Byrd (but not on Lookadoo) a default decree was on Sept. 30, 1947, rendered by the Chancery Court granting the prayers of the complaint.

After the end of the term. of court at which this decree was rendered, Byrd and Lookadoo filed their petition asking that the decree of Sept. 30, 1947, be set aside and the cause heard anew on its merits. By decree entered on May 26, 1949, the Chancellor dismissed this petition, and the present appeal is taken from that order of dismissal.

The first ground relied upon by appellants for vacating the original decree is that defendant Lookadoo had not been served in the proceeding. This would be a good reason for setting aside a judgment under Ark. Stats., 1947, § 29-506. In answer, Brooks contended that he had no contract with Lookadoo, but only with Byrd, and that any interest which Lookadoo had in the transaction was only under a contract with Byrd to share in Byrd's contract with Brooks. This was supported by the fact that only Byrd's name, and not Lookadoo's, appeared on the original voucher issued after the Dec. 21, 1944, hearing, even though much of Lookadoo's work on the case had then already been done. The claim of a separate contract, apart from Byrd's, was not overtly asserted until much later, though the contract must have come into existence, if at all, sometime prior to Dec. 21, 1944. The Chancellor heard considerable evidence on the question of whether Lookadoo himself had a contract with Brooks, rather than merely an interest in Byrd's

contract. There was evidence both ways. We are unable to hold that his conclusion, that there was no such separate contract, was against the preponderance of the evidence. The Chancellor's determination of this point must therefore stand.

Appellants argue much more strenuously that the Chancellor mistakenly held that he had no power to set aside the injunction decree, save on statutory grounds, after the end of the term of court at which it was rendered. This argument is based on our holding in *Stane* v. *Mettetal,* 213 Ark. 404, 210 S. W. 2d 804, to the effect that a chancery court has power, entirely apart from the statutory limitations prescribed by § 29-506, to vacate or modify a previously granted injunction, even after lapse of the term, provided no vested rights of the parties be abrogated by its action. The difficulty with the argument is that it is not contradicted by the Chancellor's decree here appealed from. There is no statement in the decree, nor elsewhere in the record, indicating that the Chancellor thought he lacked the power to vacate or modify the earlier injunction. The holding in *Stane* v. *Mettetal* certainly was not that a Chancellor is required to vacate an injunction decree every time that he is asked to do so; it is only that he is empowered to exercise his judicial discretion on the basis of evidence presented to him. He *may* set the injunction order aside, or amend it, *if* he is convinced that a different order is justified. In the present case the Chancellor heard all the evidence offered to sustain the petition. There is nothing in the record indicating a refusal to hear any proffered evidence. After hearing all the petitioner's evidence, the Court remained unconvinced. Under *Stane* v. *Mettetal* this was clearly permissible. The Chancellor has not abused his discretion in the matter.

This Court is of the view that a possible further ground for affirmance, strongly urged by appellee, should be mentioned in our opinion. This is that the contract here in question, involving as it does an undertaking by members of the General Assembly to aid in securing payment by the State of a claim which is the

subject of legislative appropriation of funds, is void as against public policy. Since the case must be decided on other grounds, we do not now pass on the validity of the contract. We mention this to make it clear that we have not, by inference or otherwise, approved it as valid. Neither do we pass on the constitutionality of the 1943 and 1945 acts creating a Claims Commission.

The decree of the Chancery Court is affirmed.

(NOTATION BY THE CHIEF JUSTICE.—I declined to participate in the discussions preliminary to the decision of this case, or to cast a vote, for the reason that in 1933 and until September 1936 my position as State Comptroller placed me on the Claims Commissions created in 1933 and 1935. As Comptroller and *ex officio* member of the Commissions, I conducted official investigations into the Brooks claim. On the strength of documentary evidence and personal testimony submitted by Mr. Brooks [supplemented by very definite statements by Capt. John T. Burkett] my Commission vote was cast to reject the demand. None of these matters was mentioned by me to any member of the Court until after the decision was made.)